IN THE MATTER OF STEPHEN H. FEUERSTEIN,
AN ATTORNEY-AT-LAW.

July 11, 1983.

*Richard O. Venino* Sea Girt, appeared on behalf of the District IX Ethics Committee.

The respondent did not appear at the hearing.

## ORDER OF PUBLIC REPRIMAND

The Disciplinary Review Board having filed a report recommending that STEPHEN H. FEUERSTEIN of ENGLISHTOWN be publicly reprimanded for knowingly and willfully failing to carry out contracts of employment to their conclusion in violation of *DR.* 6–101(A)(2) and *DR.* 7–101(A)(2) and (3), and good cause appearing;

It is ORDERED that the report of the Disciplinary Review Board is hereby adopted and that STEPHEN H. FEUERSTEIN be and hereby is publicly reprimanded for his violation of *DR.* 6–101(A)(2) and *DR.* 7–101(A)(2) and (3); and it is further

ORDERED that the Decision and Recommendation of the Disciplinary Review Board, together with this Order and the full record of this matter, be added as a permanent part of the file of said STEPHEN H. FEUERSTEIN as an attorney at law of the State of New Jersey; and it is further

ORDERED that STEPHEN H. FEUERSTEIN reimburse the Administrative Office of the Courts for appropriate administrative costs in this matter, including the production of transcripts.

Decision and Recommendation of the Disciplinary
Review Board

To the Honorable Chief Justice and Associate Justices of the Supreme Court of New Jersey:

Respondent is an attorney admitted in both New York and New Jersey, who is primarily engaged as a tax attorney in New York. His practice of law in this State, which he operates from his home in Englishtown, is essentially limited to a small number of real estate closings which are referred to him by friends or other clients. It is respondent's alleged unethical conduct in

three New Jersey real estate transactions which forms the focus of this proceeding.

## A. NAZARETH MATTER

In the most serious matter presented, respondent represented a couple named Nazareth in their purchase of a residence in Manalapan Township. The closing took place on October 2, 1980, and shortly thereafter the Nazareths provided respondent with $1,275.10 to be used to pay fees owed incident to the closing.[1] Respondent deposited these funds in a trust account which he maintained at a branch of the Manufacturers Hanover Trust Company in New York City.

Before disbursements were made a dispute arose between respondent and his clients concerning respondent's legal fee. As a result of his disagreement respondent unilaterally decided to take no further action in the matter. He did not distribute the funds entrusted to him by his clients to the proper parties and was totally uncommunicative with his clients, the title company and the savings and loan when they attempted on numerous occasions, both in writing and by telephone, to inquire as to why the fees had not been paid and certain required documents not filed.

Failing in his efforts to obtain respondent's cooperation in a cordial manner, Mr. Nazareth finally filed both an ethics complaint with the District IX Ethics Committee and a claim with the Clients' Security Fund. At the time of the ethics hearing, which was held on April 19, 1982, respondent testified that the funds paid him by the Nazareths approximately 18 months earlier still remained in his New York trust account.

---

[1] Included in the charges owed were $609.60 to Carteret Savings and Loan Association for prepaid interest and tax reserve; $495.50 to Mid-State Abstract Co. for abstract of title and title insurance; $150 for a survey and $20 in filing fees.

After the hearing, by letter dated May 3, 1982, respondent advised the Clients' Security Fund that he had distributed the $1,275.10 entrusted to him by the Nazareths to the rightful recipients. With his letter to the Fund, respondent enclosed copies of checks dated April 23, 1982 issued on a Manufacturers Hanover Trust Company "Special Account" of "Feinsod and Feuerstein".[2]

### B. WARD MATTER

Respondent's representation of Mr. and Mrs. Patrick Ward in their purchase of a home in Manalapan Township in May 1981 presents a distressing parallel to the *Nazareth* matter. Here again the Wards provided respondent with funds needed to pay the title company and other necessary fees related to the closing. Again, after the closing the clients and respondent had a dispute regarding his legal fee, and respondent decided to take no further action on their behalf. He did not disburse the escrow monies as he was duty bound nor did he file required documents with the bank and title company. Additionally he did not respond to the many inquiries regarding his inaction.

At the ethics committee hearing, which took place almost a year after the *Ward* closing, he advised that the closing funds provided him by the Wards remained lodged in a New York trust account. Subsequent to the ethics hearing, respondent advised the hearing panel chairman that all funds withheld in the *Ward* matter had been appropriately paid.

### C. LILLIANTHAL MATTER

The third matter concerns respondent's representation of Mr. and Mrs. Jay Lillianthal in their purchase of a home in Marlboro Township in April 1980. At the closing the Lillianthals were not

---

[2]Mr. Feinsod is respondent's former New York law partner and is not admitted to the practice of in New Jersey. According to respondent their partnership terminated in April 1981.

provided with the deed, title insurance policy, survey and closing papers. Periodically thereafter, Mr. Lillianthal called respondent and was on several occasions advised that the material would be forwarded in short order. Receiving no results by telephone, Mr. Lillianthal wrote to respondent in March 1981 asking for his closing documents. Although copies of some documents were sent, others remained outstanding. Mr. Lillianthal eventually sought the advice of the District IX Ethics Committee whose Secretary wrote respondent in May 1981, asking that he forward Mr. Lillianthal the original deed and title insurance policy. Respondent did not respond to this request and in June 1981 Mr. Lillianthal filed an ethics complaint against him.

At the hearing before the Committee respondent alleged that he had provided his client with all required documents, but could provide absolutely no verification of same.

## CONCLUSION AND RECOMMENDATION

In each of the matters before us respondent knowingly and willfully failed to carry out a contract of employment to its conclusion. See *DR* 7–101(A)(2) and (3). His misconduct in three similar matters is clearly sufficient to establish a pattern of negligence in his handling of real estate transactions. *DR* 6–101(A)(2).

Particularly disturbing, however, is the fact that in two of the matters, *i.e., Nazareth* and *Ward,* respondent unilaterally determined not to remit escrow monies to the proper parties due to his pique at not receiving what he considered to be sufficient compensation for his legal services. Instead of pursuing appropriate legal remedies he simply closed his mind to the matters, without even bothering to inform his clients that the escrow funds had not been disbursed. Such conduct is unquestionably unprofessional and unethical. *DR* 1–102(A)(6). See *In re Rabb,* 83 *N.J.* 109 (1980).

It is also evident that at all times during his representation in these three New Jersey real estate transactions respondent, who was admitted to the practice in 1973, failed to maintain a trust and business account in a New Jersey financial institution, as required by *R.* 1:21–6(a). Such a failing is inexcusable especially in view of the fact that his New Jersey practice is basically confined to real estate transactions, which mandate the use of an escrow account. *DR* 9–102(A) and (C).

In mitigation, respondent advised the Committee that a variety of physical ailments which had befallen him during the past several years, including quadruple bypass open-heart surgery, placed tremendous pressure on him, both physically and emotionally, resulting in an inability to meet commitments to many of his clients.

In spite of his ailments, respondent's misconduct cannot be excused. Disciplinary action is required to both protect the public and insure that there will be no recurrence.

The Board therefore recommends that respondent be publicly reprimanded for his conduct. The Board further recommends that the respondent be required to reimburse the Administrative Office of the Courts for appropriate administrative costs, including production of transcripts.

DISCIPLINARY REVIEW BOARD
By: /s/ Stephen B. Wiley
    Stephen B. Wiley
    Vice-Chairman

DATED: March 22, 1983